## McCAULLEY v. CITY OF PHILADELPHIA.

(District Court, E. D. Pennsylvania. August 20, 1900.)

NAVIGABLE WATERS—OBSTRUCTIONS—LIABILITY OF CITY.

A city, although charged by statute with the duty of keeping the channels of navigable streams within its limits free from obstructions, cannot be held liable for injuries caused by a sunken wreck, on the ground of negligence, where the owners had contracted with a wrecking company to raise the vessel, and it is not shown that such company was not prosecuting the work with ordinary diligence and reasonable efficiency.

In Admiralty. Suit to recover damages on the ground of the negligence of the defendant city in failing to remove an obstruction from a navigable stream.

Horace L. Cheyney and John F. Lewis, for libelant.
John L. Kinsey, City Sol., for respondent.

McPHERSON, District Judge. The libelant, who is the managing owner of the tugs Rescue and John C. Bradley, brings this action as bailee of the ship Windsor Park to recover damages for injury to the ship, caused by collision with the sunken wreck of the steamer Maryland. The collision occurred in December, 1893, while the ship was being towed by the tugs up the channel of the Schuylkill river, within the municipal limits of the city of Philadelphia, and the cause of action is alleged to be the negligence of the city in failing to remove the wreck, which had been obstructing the channel to some extent since November of the year preceding.

The duty of the city to keep the channel clear is said to rest upon section 28 of the consolidation act of 1854 (P. L. 37), which provides in part as follows:

"It shall be the duty of the said councils, after the requisite surveys and soundings shall have been made, to fix the lines, beyond which no wharf or pier shall be constructed, and to keep the navigable waters within said city forever open and free from obstructions. The city councils shall authorize the construction of wharves upon a plan and scale to meet the demands of commerce, keep the same and the avenues leading thereto open and free from obstruction."

The city denies its liability upon the following grounds:

(1) Because the act of 1859 (P. L. 643) has impliedly repealed section 28 of the act of 1854, by transferring the duty to remove obstructions from the channel of the river to the master warden, who is said to be an officer of the state, and not of the city. The act is as follows:

"That from and after the passage of this act, it shall be the duty of the master warden of the port of Philadelphia, immediately upon information of the sinking of any canal boat, barge, or other vessel in the channel way of the tide waters of the river Delaware or river Schuylkill, within the limits of the port of Philadelphia, to give notice to the owner, master or other agent having charge thereof, to raise and remove such obstruction within ten days after the date of said notice, under penalty of one hundred dollars, to be sued for and recovered before any alderman or justice of the peace within the limits aforesaid, as by law such sums are recoverable from the owner, master or other agent having control of the same, to and for the use of the board of wardens of the port of Philadelphia, subject, nevertheless, to an appeal to the court of common pleas of the proper city or county; which said sum or

sums so recovered shall be appropriated towards the payment of salaries and contingent expenses of the warden's office; and in case of the refusal or neglect of the parties interested as aforesaid, to raise and remove any obstruction within the time specified in said notice, it shall be the further duty of said master warden to have raised and removed at the expense of the owner, master or agent;. and the said canal boat, barge or other vessel, together with the cargo thereof, shall be subject to a lien in the hands of the said master warden until the expenses of raising and removing such shall be fully paid to him; and the said master warden is hereby authorized to sell at public auction to the highest bidder, for cash, all such property, or so much thereof as is necessary to pay all the expenses of raising and removing, together with the penalty aforesaid, and shall return the surplus, if any, of such sale to such person or persons as shall be legally entitled to receive the same: provided, that the master warden before proceeding to sell any such property as aforesaid, shall give five days' notice by at least twenty handbills (printed), to be posted in conspicuous places along Delaware avenue, setting forth a full description of the property to be sold, together with time and place of selling the same."

(2) Because, even if the act of 1854 was not affected by the act of 1859, the duty of the city has been suspended by section 4 of the act of congress of June 14, 1880 (1 Supp. Rev. St. 296), which reads as follows:

"Whenever hereafter the navigation of any river, lake or harbor or bay, or other navigable water of the United States shall be obstructed or endangered by any sunken vessel or water craft, it shall be the duty of the secretary of war, upon satisfactory information thereof, to cause reasonable notice, of not less than thirty days, to be given, personally or by publication, at least once a week in the newspaper published nearest the locality of such sunken vessel or craft, to all persons interested in such vessel or craft, or in the cargo thereof, of the purpose of said secretary, unless such vessel shall be removed as soon thereafter as practicable by the parties interested therein, to cause the same to be removed. If such sunken vessel or craft and cargo shall not be removed by the parties interested therein as soon as practicable after the date of the giving of such notice by publication, or after such personal service of notice, as the case may be, such sunken vessel shall be treated as abandoned and derelict, and the secretary of war shall proceed to remove the same."

(3) Because, in any event, the facts in proof fail to show negligence on the part of the city.

I do not find it necessary to consider the first two grounds of defense, the third being a sufficient reply to the action. The undisputed facts are as follows: In November, 1892, a destructive fire occurred at Point Breeze, in the course of which the steamer Maryland was partially consumed. She was run aground upon the east bank of the Schuylkill river, and sank in such a position that 50 or 60 feet of her length projected obliquely into the channel. In this position she was an obstruction to the safe navigation of the river, as the channel at this point is narrow and winding. The wreck was abandoned to the underwriters, and was sold on December 23d. The purchaser immediately contracted with a wrecking company to raise and remove her, but, owing to the season and the weather, no work could be done until March of the following year. Early in that month the company began the effort to lift and move the wreck, and continued the work with diligence, but without success, for about eight months. In November, 1893, the United States government, moved by complaints that the obstruction still existed, took action

under the federal statute heretofore cited, and gave notice as therein provided. On December 19th, the government awarded the contract for removing the wreck, and work was begun in January, 1894. It does not appear in evidence when the obstruction was finally removed from the channel, but the report of the government's engineer in charge, to the effect that the wreck had been cleared away to the line of low water, was not made until March 27, 1895.

Upon these facts, I do not think that the charge of negligence against the city has been made out. Assuming that the city was bound to remove obstructions, and assuming also that it knew of this particular obstruction, it is clear that its duty was no greater than this: to exercise ordinary diligence under all the circumstances of the case. I am unable to sustain the position that the city was bound to step in and displace the agency that had been set in operation by the owner of the wreck, in the absence of evidence that the work was being done improperly or inefficiently. It nowhere appears that the wrecking company was either incompetent or negligent. On the contrary, the undisputed testimony on this point is that the company prosecuted the work with diligence, but failed to succeed because of the difficulty of the enterprise. "Every time we took it out of the river," one of the witnesses said, "she slid back again." But the libelant made no attempt to prove that the failure was due to a lack of proper appliances, or to want of skill or diligence. I do not feel satisfied to draw an inference of the company's negligence merely from its failure to remove the obstruction within eight months, especially in the face of the uncontradicted testimony that proper skill and diligence were used. This being so, it seems to me impossible to hold that the city was negligent because it did not take into its own hands the prosecution of a work which, so far as appears, it could have done no better than the agent of the owner was doing.

The libel is dismissed, with costs.